UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENMIN MA,<br><br>   Plaintiff,<br><br>  v.<br><br>USCIS DIRECTOR,<br><br>   Defendant. | Case No. 15-cv-05672-MEJ<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 21 |

## INTRODUCTION

This Order considers whether the United States Citizen and Immigration Service ("USCIS") properly revoked the visa petition for Plaintiff Wenmin Ma ("Plaintiff") following the death of her mother, the petitioner. Pending before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot., Dkt. No. 20; Def.'s Mot., Dkt. No. 21. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant USCIS Director's ("Defendant") Motion and **DENIES** Plaintiff's Motion for the reasons set forth below.

## BACKGROUND

Plaintiff is the daughter of Shuzen Li. Certified Administrative Record ("AR") 27, Dkt. No. 17-18[1]; *see also* AR 46. Li, a citizen of the People's Republic of China, became a United States permanent resident on January 31, 2007. AR 19. On May 1, 2007, Li filed a petition for alien relative (Form I-130) to classify Plaintiff as her unmarried daughter. AR 13-15. USCIS approved the I-130 petition on July 20, 2009, classifying Plaintiff as the unmarried daughter of a lawful permanent resident. *Id.*; AR 9.

---

[1] Dkt. No. 17 contains pages 1-98, while Dkt. No. 18 contains pages 99-182.

Li naturalized on February 26, 2013, and consequently, the I-130 petition was automatically converted to a petition for the unmarried son or daughter of a U.S. citizen. AR 11.[2] However, Li died on October 30, 2014. AR 6. The State Department's National Visa Center sent a memorandum to USCIS on July 9, 2015, regarding Li's I-130 petition. AR 4. The memorandum stated that the I-130's beneficiary, Plaintiff, appeared to not be eligible for the benefit sought due to the death of the petitioner and recommended the petition be revoked. *Id.*

USCIS issued a notice of decision to Li's estate on August 24, 2015, stating that due to Li's death and pursuant to 8 C.F.R. § 205.1(a)(3)(i)(C), the I-130 petition was automatically revoked as of the date of its approval. AR 2. The notice included instruction on how to request reinstatement of the I-130 petition's approval under 8 C.F.R. § 205.1(a)(3)(i)(C)(2). *Id.*

Plaintiff filed this case on December 11, 2015. Compl., Dkt. No. 1. Pursuant to the Administrative Procedure Act, she seeks review of USCIS's decision to revoke Li's I-130 petition due to Li's death. *Id.* at ¶ 1. Plaintiff alleges the Immigration and Nationality Act ("INA") only authorizes USCIS to revoke an immigrant visa petition where the evidence warrants denial (*id.* at ¶ 11), and alleges the revocation in this case was unlawful because Plaintiff continued to be Li's daughter even after her mother's death (*id.* at ¶ 12-13). In her Motion, Plaintiff contends that as she remains the unmarried daughter of Li, USCIS should not have revoked the petition. *See* Pl.'s Mot. Plaintiff argues that "[t]he single question before this Court is whether the death of Shuzhen Li would have been a good and sufficient cause to deny her petition upon her daughter's behalf under 8 U.S.C. § 1153(a)(1) at the time it was approved. In other words, does the unmarried daughter of a citizen continue to be the unmarried daughter of a citizen after her citizen mother has died?" Pl.'s Mot. at 7.

Defendant phrases the issue somewhat differently: "whether Li's death was a 'good and sufficient cause' to *revoke* an approved petition pursuant to 8 U.S.C. § 1155[.]" Def.'s Reply at 2-

---

[2] Plaintiff also completed two sets of U.S. Department of State ("State Department") Form DS-230, Application for Immigrant Visa and Alien Registration ("DS-230 Application"). AR 161-74; 176-85. Plaintiff filed each with the State Department: the first on August 19, 2013, and the second on October 11, 2013. AR 161, 176. There is no evidence the State Department approved either application. *See* AR 161-74; 176-85.

2

3 (emphasis in original). Defendant argues USCIS's revocation adhered to the INA's regulatory scheme, which provides for the automatic revocation of approved immediate relative petitions upon the death of a petitioner. *See* Def.'s Mot.[3] As such, USCIS argues it properly utilized its discretion to revoke the petition in this case. *Id.*

## LEGAL STANDARD

The Administrative Procedure Act ("APA") provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 706.[4] Courts routinely resolve APA challenges to agency administrative decisions by summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). However, courts do not utilize the standard analysis for determining whether a genuine issue of material fact exists. *See Occidental Eng'g Co. v. INS.*, 753 F.2d 766, 769-70 (9th Cir. 1985). In reviewing an agency action, a court "is not required to resolve any facts in a review of an administrative proceeding." *Id.* at 769. "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* "Because the presence of the administrative record, which the parties have stipulated to, usually means there are no genuine disputes of material fact, it allows the Court to decide whether to set aside the agency determination on summary judgment without a trial." *Sodipo v. Rosenberg*, 77 F. Supp. 3d 997, 1001 (N.D. Cal. Jan. 12, 2015) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)).

Under the APA, a reviewing court may set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The standard of review under § 706(2)(A) is deferential; a court is not empowered to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Sierra Club v. Clark*, 756 F.2d 686, 690 (9th Cir. 1985) ("Traditionally, an agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable."). Judicial review under the APA is "narrow but searching and

---

[3] Defendant attempted to argue more generally that the death of Plaintiff's mother was good and sufficient cause to revoke the petition in this case regardless of the regulation applied.

[4] Defendant has not challenged the Court's jurisdiction to review USCIS's decision in this matter.

3

careful," and courts need not uphold agency actions where "there has been a clear error of judgment." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1065 (9th Cir. 2004) (citations and internal quotation marks omitted).

## DISCUSSION

### A.   Overview & Arguments

The INA imposes a numerical quota on the number of immigrant visas that may be issued and the number of aliens who may otherwise be admitted into the United States for permanent residence. *See* 8 U.S.C. § 1151(a). However, "[t]he State Department prioritizes visa applications made by 'the unmarried sons or daughters of citizens of the United States.'" *Federiso v. Holder*, 605 F.3d 695, 696 (9th Cir. 2010) (quoting 8 U.S.C. § 1153(a)(1)). Specifically, the INA provides that lawful permanent residents of the United States, under certain conditions, may petition USCIS for classification of their alien son or daughter as an "immediate relative." 8 U.S.C. §§ 1153(a)(2)(B), 1154(a)(1)(B)(i). The lawful permanent resident must file a Form I-130 petition seeking formal recognition by USCIS of the relationship. *See* 8 U.S.C. § 1154(a)(1)(B)(i); 8 C.F.R. § 204.1(a). The filing date of a petition constitutes the "priority date" and establishes the beneficiary's place in the queue for an immigrant visa. 8 C.F.R. § 204.1(b).

The USCIS must approve the petition and notify the State Department if USCIS determines the facts of the petition are true and the listed beneficiary is an authorized immediate relative of the petitioner. 8 U.S.C. § 1154(b). But approval of the petition does not guarantee the alien will receive a visa. *See Montoya v. Holder*, 744 F.3d 614, 616 (9th Cir. 2014) ("[T]he mere filing and approval of a Form I-130 creates no vested right."); *Tongatapu Woodcraft Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984) ("[A visa petition] does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States."). Under 8 U.S.C. § 1155, "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 204. Such revocation shall be effective as of the date of approval of any such petition."

The INA gives the Secretary of the U.S. Department of Homeland Security (the "Secretary") authority to promulgate regulations to administer the Act. *See* 8 U.S.C. § 1103(a)(1),

1 (3). The Secretary has consequently promulgated regulations identifying situations where the

2 revocation of an approved petition is automatic. 8 C.F.R. § 205.1. One such situation is the death

3 of the petitioner, if the death occurs before the beneficiary comes to the United States. 8 C.F.R.

4 § 205.1(a)(3)(i)(C). Any such revocation is effective as of the date of the approval of the petition.

5 8 C.F.R. § 205.1(a). Specifically, the relevant regulation applied by the USCIS in this case

6 provides in pertinent part:

> (a) Reasons for automatic revocation. The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval:
> . . .
> (3) If any of the following circumstances occur before the beneficiary's or self-petitioner's journey to the United States commences or, if the beneficiary or self-petitioner is an applicant for adjustment of status to that of a permanent resident, before the decision on his or her adjustment application becomes final:
> (i) Immediate relative and family-sponsored petitions, other than Amerasian petitions.
> . . . .
> (C) Upon the death of the petitioner, unless:
> . . .
> (2) U.S. Citizenship and Immigration Services (USCIS) determines, as a matter of discretion exercised for humanitarian reasons in light of the facts of a particular case, that it is inappropriate to revoke the approval of the petition. USCIS may make this determination only if the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213A(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 CFR part 213a as a substitute sponsor.

19 8 C.F.R. § 205.1(a). Defendant asserts that "[a]utomatic revocations pursuant to section 205.1(a)

20 were established under the notice-and-comment procedures of the APA and have been codified

21 under this regulation since January 1, 1977." Def.'s Mot. at 8-9 (citing Immigrant and

22 Nonimmigrant Status, 41 Fed. Reg. 55849 (Dec. 23, 1976) (codified at 8 C.F.R. § 205.1); *see also*

23 5 U.S.C. § 553(b)).

24 In 2009, Congress changed the governing law with respect to an alien who is seeking an

25 immigration benefit through a deceased "qualifying relative." 8 U.S.C. § 1154(*l*).[5] Section 204(*l*)

26 of the Act, 8 U.S.C. § 1154(*l*) (hereafter referred to as "§ 1154(*l*)"), as amended by § 568(d) of the

27

28
---
[5] The Court italicizes the lower case letter "L" to differentiate it from the number one (1).

5

1  DHS Appropriations Act, 2010, Public Law 111-83, 123 Stat. 2142, 2187-88 (2009), now
2  provides in relevant part that:

> An alien described in paragraph (2) [which describes I-130 beneficiary petitions] who resided in the United States at the time of the death of the qualifying relative and who continues to reside in the United States shall have such petition . . . and any related applications, adjudicated notwithstanding the death of the qualifying relative, unless the Secretary of Homeland Security determines, in the unreviewable discretion of the Secretary, that approval would not be in the public interest.

8 U.S.C. § 1154(*l*)(1); *see also Williams v. Sec'y, U.S. Dep't of Homeland Sec.*, 741 F.3d 1228, 1236 (11th Cir. 2014) (finding § 1154(*l*) alters 8 C.F.R. § 205.1(a)'s automatic revocation procedures, albeit in a spousal revocation situation). In amending the Act, Congress noted in its Construction statement for § 1154(*1*) that "[n]othing in the amendment made by paragraph (1) [above] may be construed to limit or waive any ground of removal, basis for denial of petition or application, or other criteria for adjudicating petitions or applications as otherwise provided under the immigration laws of the United States other than ineligibility based solely on the lack of a qualifying family relationship as specifically provided by such amendment." P.L. 111-83, Title V, § 568(d)(2) (2009).

The parties' arguments are as follows. Defendant argues (1) 8 C.F.R. § 205.1(a)(3)(C) (hereafter "§ 205.1(a)(3)(C)") permitted USCIS to automatically revoke a Plaintiff's I-130 petition based on the death of her mother, the petitioner; (2) this long-standing regulation is the Secretary's permissible interpretation of Congress' mandate under 8 U.S.C. § 1155 (hereafter "§ 1155") that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 204"; and (3) Congress has recently implicitly reiterated the validity of this interpretation in § 1154(*l*), as it "demonstrates a clear congressional acknowledgment of the longstanding practice of denying petitions upon the death of petitioners and congressional intent to allow for the continued processing of immigrant visas after the petitioner's death only in cases where the beneficiary is in the United States." Def.'s Mot. at 6-12. Plaintiff, for her part, argues Defendant did not satisfy § 1155's "good and sufficient cause" test to revoke Plaintiff's petition because she remained Petitioner Li's daughter even after Li's

6

death and therefore she remained qualified for a visa.  *See* Pl.'s Mot.  She further argues § 205.1(a)(3)(C) is an impermissible interpretation of § 1155's "good and sufficient cause" standard and is not entitled to deference, and § 1154(*l*) does not show Congress's clear understanding or intent to adopt that regulation.  *See id.* & Pl.'s Reply.

**B.     Application of *Chevron* Test**

The Court must decide whether the death of Plaintiff's mother, the Petitioner, constitutes "good and sufficient cause" to revoke the petition.  To answer this question of statutory interpretation, the Court follow the two-step framework laid out in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs. (Brand X)*, 545 U.S. 967, 980 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion.").  "Under the first step, we determine 'whether Congress has directly spoken to the precise question at issue.'"  *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010) (quoting *Chevron*, 467 U.S. at 842-43).  "If the intent of Congress is clear, our inquiry ends and we give effect to Congress' unambiguously expressed intent." *Perez-Guzman v. Lynch*, ___ F.3d ___, No. 13-70579, 2016 WL 4536572, at *4 (9th Cir. Aug. 31, 2016) (citing *Locke*, 626 F.3d at 1054).  "If, on the other hand, Congress has not spoken to a particular issue or the statute is ambiguous, we may consider the responsible agency's interpretation of the statutory scheme." *Id.* "[I]f the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980.

1.     Step One of *Chevron* Analysis

Under the first step in the *Chevron* analysis, the Court "begin[s] with the language of the statute, reading it in context and giving undefined terms their ordinary meanings." *Perez-Guzman*, 2016 WL 4536572, at *5 (citing *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283-84 (2011); *Synagogue v. United States*, 482 F.3d 1058, 1061-62 (9th Cir. 2007)).  The Court's "goal is to understand the statute 'as a symmetrical and coherent regulatory scheme' and to 'fit, if possible, all parts into a harmonious whole.'" *Gila River Indian Cmty. v. United States*, 729 F.3d

1139, 1145 (9th Cir. 2013) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

Section 1155 does not define "good and sufficient cause," and the INA is otherwise silent about this standard. However, the Ninth Circuit Court of Appeals has agreed with the Bureau of Immigration Appeals' ("BIA") interpretation of § 1155's "good and sufficient cause" as being satisfied if "the evidence of record at the time the decision was issued . . . warranted . . . [a] denial" of the petition. *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 n.3 (9th Cir. 2008) (quoting *Matter of Estime*, 19 I. & N. Dec. 450, 452 (BIA 1987)); *see Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 886 (9th Cir. 2009) (adopting same BIA standard). Courts thus review the agency's revocation as if it were an initial denial of the petition at issue.[6] *Love Korean Church*, 549 F.3d at 754 n.3 (citing *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012-13 (9th Cir. 2006)); *Matter of Estime*, 19 I. & N. Dec. at 450 ("In determining what is 'good and sufficient cause' for the issuance of a notice of intention to revoke, we ask whether the evidence of record at the time the notice was issued, if unexplained and unrebutted, would have warranted a denial based on the petitioner's failure to meet his or her burden of proof.").

But Congress has not otherwise spoken on the precise issue before the Court. As the INA itself does not define the specific grounds for revocation of a visa petition, USCIS is left to interpret Congress's ambiguous "good and sufficient cause" standard. And although § 1154(*l*) describes instances where USCIS must not revoke such petitions, it does not affirmatively establish when Congress finds revocation acceptable. The Court accordingly proceeds to *Chevron*'s second step, asking whether the agency's interpretation of an ambiguous statute is a permissible construction of the statutory scheme. *See Chevron*, 467 U.S. at 843.

2. Step Two of *Chevron* Analysis

At step two of *Chevron*, courts must "accept the agency's construction of the statute" so long as that reading is reasonable, "even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980; *see also Kyung Park v.*

---

[6] Defendant has not explained why USCIS established § 205.1(a)(3)(C) or why its authors believed this regulation conformed with § 1155's good and sufficient cause requirement.

*Holder*, 572 F.3d 619, 624 (9th Cir. 2009) (*Chevron* deference applicable where there is a binding agency precedent on-point in the form of a regulation or published BIA case). Deference "is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

Plaintiff argues that deference is inappropriate in this case. She points out the Ninth Circuit (1) found that the son of a deceased U.S. citizen remained her child even after her death, *see Federiso v. Holder*, 605 F.3d 695 (9th Cir. 2010), and (2) has indicated that the death of a petitioner does not change the relationship between the petitioner and beneficiary merely because of the petitioner's death, *see Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006). *See* Pl.'s Mot. 1-2. Plaintiff contends this case law shows USCIS's § 205.1(a)(3)(C) regulation is *ultra vires* and that by enacting § 1154(*l*), Congress "unequivocally endorsed" the understanding that the daughter of a U.S. citizen continues to be a daughter even after the parent's death. Pl.'s Reply at 2-4. Thus, Plaintiff indicates Defendant's interpretation of § 1155 is impermissible.

The Court finds Plaintiff's arguments unpersuasive. First, *Federiso* and *Freeman* both considered whether the government had properly interpreted the statutory definition of "immediate relative"—not whether the death of the petitioner was grounds for revoking a visa petition, as in this case. Neither case even mentions § 1155 or its "good and sufficient cause" standard. Instead, in *Federiso*, the Ninth Circuit held that under the INA, an alien son of a naturalized U.S. citizen remained eligible for a discretionary waiver of deportability for fraud even though his U.S. citizen mother had died. *Federiso*, 605 F.3d at 698 (assessing 8 U.S.C. § 1227(a)(i)(H)). And in *Freeman*—a 2006 case, issued before the amendment to § 1154(*l*)—the Ninth Circuit held that an alien whose citizen spouse died while her adjustment of status application was pending remained an immediate relative, despite being widowed after less than two years of marriage. *Freeman*, 444 F.3d at 1043 (assessing 8 U.S.C. § 1151(b)(2)(A)(i)). While these cases persuasively indicate the death of a U.S. citizen should not negatively impact *all* immigration decisions, they do not hold broadly that the death of a petitioner such as the one in this case should have no impact or consequences on the pending visa petition.

Second, the Court agrees with Plaintiff that § 1154(*l*) indicates Congress' recognition that children of petitioners remain their children even after death; but the Court does not agree this statute undermines Defendant's decision to revoke the petition in this case. Although Congress' reasoning for amending the INA is unclear, it appears Congress recognized a petitioner's death may be grounds for revocation of visa petitions in certain instances. Indeed, § 1154(*l*) effectively prohibits revocation based on death of a petitioner when the beneficiary alien resides in the United States at the time;[7] however, but in doing so, Congress also noted that "[n]othing in [§ 1154(*l*)(1)] . . . may be construed to limit or waive any ground of removal, basis for denial of petition or application, or other criteria for adjudicating petitions or applications as otherwise provided under the immigration laws of the United States other than ineligibility based solely on the lack of a qualifying family relationship as specifically provided by such amendment." P.L. 111-83, Title V, § 568(d)(2) (2009). This construction appears to leave intact decades of decisions in which a petitioner's death results in the automatic revocation of the visa petition when the beneficiary does not reside in the United States. Equally significant is the fact that the plain language of this provision limits the prohibition on revocation to those beneficiary aliens who reside in the United States; if Congress intended otherwise, it would not have included such a limitation in the statute. *See In re Adinolfi*, 543 B.R. 612, 621 (B.A.P. 9th Cir. 2016) ("The best source of information about Congress' purpose is the words of the statutes it enacts."). While § 1154(*l*) does not ambiguously establish Congress's intent under these circumstances, it does reinforce Defendant's construction of the INA under the circumstances.

The only other court that has confronted this issue arrived at the same conclusion. In *Desai v. U.S. Citizenship & Immigration Servs.*, Case No. 14-593 DSF, Dkt. No. 40 (C.D. Cal., filed July 24, 2015), the court found while that "[t]he language of § 1154(l) does not provide explicit statutory authority for denials of petitions on behalf of relatives of citizens who die while the petition is pending[,] . . . . by creating an exception to that rule, it shows a clear Congressional understanding of and intent to adopt the long-standing practice of the immigration agencies." *Id.*

---

[7] It appears Plaintiff does not qualify for this exception as she did not reside in the United States at the time of her mother's death.

at 2.  The court reasoned that "[t]he text of § 1154(l) indicates that Congress intends that certain petitions be denied where the citizen sponsor has died unless the requirements of § 1154(l) are met"; consequently, "[§] 1154(l) would make no sense if Congress did not approve of the general practice of denying petitions where the citizen relative has died – there is no need for an exception to a rule that does not properly exist."  *Id.*  In light of the passage of § 1154(*l*), the court rejected the application of *Freeman* and *Federiso*, and ultimately concluded that as the plaintiff never resided in the United States and thus did not qualify for § 1154(*l*)'s exception to revocation, the Defendant had good and sufficient cause to revoke the visa petition.

In light of the foregoing, the Court finds Defendant's interpretation of § 1155's good and sufficient cause standard permissible and entitled to deference under the circumstances of this case.  Accordingly, the Court has no basis to overturn USCIS's revocation of the petition.

## CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.  A separate order of judgment is forthcoming.

**IT IS SO ORDERED.**

Dated: September 21, 2016

MARIA-ELENA JAMES
United States Magistrate Judge